## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Jan 15, 2020

| | |
|---|---|
| IN RE:<br><br>**THOMAS WAYNE BRYAN,**<br><br>       **Debtor.** | **Case No. 18-11331-M**<br>**Chapter 7** |
| **OKLAHOMA DHS CHILD SUPPORT SERVICES,**<br><br>       **Plaintiff,**<br><br>v.<br><br>**THOMAS WAYNE BRYAN,**<br><br>       **Defendant.** | **Adv. No. 18-01050-M** |

### MEMORANDUM OPINION

Since the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[1] bankruptcy courts have largely been removed from the province of family law. In general terms, with very limited exceptions, the debts owed by one ex-spouse to another ex-spouse are no longer dischargeable in bankruptcy cases. This case raises a slightly different issue; namely whether the failure by an employer to remit court ordered child support as part of the wages of an employee may be properly discharged. There is also an issue as to whether the destruction of business records by the employer is conduct so egregious as to justify denial of the employer's discharge *in toto*. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

---

[1] Pub. L. No. 109-8, 119 Stat. 23 (2005).

**Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[2]  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (J).

**Findings of Fact**

Thomas Wayne Bryan ("Defendant" or "Bryan") filed a petition for relief under Chapter 7 of the Bankruptcy Code with this Court on July 3, 2018. Karen Carden Walsh ("Trustee") was appointed to serve as the Chapter 7 Trustee in this case. In his schedules, Bryan listed a claim owed to Mark Villio ("Villio") for failure to withhold child support in the amount of $4,513.00.  This claim was listed as contingent and disputed. The bankruptcy case was administered as a "no-asset" case, meaning that there were no assets available for distribution to creditors, and no claims were filed.

The parties have stipulated to the following facts:[3]

1.      Defendant operated a business, Metro Landscape Services, Inc. ("Metro Landscape") since January 5, 2007.

2.      Metro Landscape generated gross receipts of $765,463.00 in tax year 2015 and gross receipts of $555,196.00 in tax year 2016.  Defendant received personal income from this business of $103,064.00 in tax year 2015 and personal income from this business of $68,575.00 in tax year 2016.

---

[2]  Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

[3] *Docket No. 31*.

2

3.      Defendant made use of Southwest Payroll as his payroll company, Kathy Stewart as his bookkeeper, and Richard Stewart, Certified Public Accountant (CPA), as his tax preparer.

4.      Villio was an employee of Defendant.[4]

5.      Defendant orally reported hours worked by employees to Southwest Payroll for issuance of pay checks.

6.      Southwest Payroll drafted Earning Statements for employees with an attached check. These were picked up by Defendant for issuance to employees.

7.      Earning Statements reflected hours, rate, taxes withheld, and additional deductions.

8.      The Earning Statements for Villio included child support deductions.

9.      **Defendant** had a statutory and fiduciary duty to withhold child support from Villio's pay.

10.     **Defendant** had a statutory and fiduciary duty to remit to Oklahoma DHS Child Support Services ("DHS") the child support withheld from Villio's pay.

11.     Defendant remitted deductions for child support to DHS by check until February 2013.

12.     The checks issued to DHS in February 2013 were returned unpaid as a result of insufficient funds.

13.     Defendant was notified by DHS that further payments were to be remitted only by money order or cashier's check.

---

[4] The parties have stipulated that Villio was an employee of ***Defendant***, rather than Metro Landscape. Indeed, the admitted facts do not distinguish between Bryan and Metro Landscape in any way, shape, or form.

3

14.     Defendant remitted deductions by money orders or cashier's checks to DHS from February 2013 through December 2016.

15.     For calendar year 2014, child support deducted by Defendant from Villio's income was $6,211.84, while only $5,454.92 was remitted by Defendant to DHS.

16.     For calendar year 2015,  child support deducted by Defendant from Villio's income was $7,403.76, while only $3,263.88 was remitted by Defendant to DHS.

17.     For calendar year 2016, child support deducted by Defendant from Villio's income was $6,527.76, while only $6,373.78 was remitted by Defendant to DHS.

18.     A total of $20,143.36 was shown by Defendant as deducted from Villio's income for child support, while the total remitted by Defendant to DHS was $15,092.58.  The amount shown as deducted but never remitted was $5,050.78.

19.     Defendant failed to maintain books and records in the ordinary course of business.

20.     Defendant did not provide books and records of his business to the Trustee.

21.     Defendant sold his home January 5, 2018, for $359,000.00.

22.     Defendant shredded business records after the sale of his house on January 5, 2018.

23.     Defendant testified in discovery that his business records in possession of Richard Steward, CPA, are inaccessible to Defendant for production.

24.     Defendant testified in discovery that his business and personal bank statements are available through Security Bank. Defendant failed to acquire those records or provide them to the Trustee.

25.     Defendant filed personal and business tax returns for 2015 and 2016 on March 14, 2019.

26.     Defendant did not file tax returns for 2017.

27.     Defendant did not provide any tax returns to the Trustee.

28.     Defendant failed to provide tax returns and business records to the Trustee.

29.     Defendant provided the Trustee with documents regarding the sale of his home.

At trial, Bryan testified that the business records of Metro Landscape were destroyed as part of the downsizing when his house was sold. Bryan testified the records were of no use to him, and that he lacked ample storage space at his new house to accommodate those records. There is no evidence in the record to indicate that at the time the records were destroyed, Bryan was contemplating filing a bankruptcy case. There is also no evidence in the record to establish that the Trustee was hampered in her administration of this case by the destruction of those records.

To the extent the "Conclusions of Law" contain any items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Burden of Proof

In order to prevail on an objection to discharge, the plaintiff must prove each statutory element by a preponderance of the evidence.[5]  Once the plaintiff establishes a prima facie case for denying a defendant's discharge under § 727, the burden of going forward shifts to the defendant.[6] The ultimate burden, however, remains with the plaintiff.[7]  In order to further the policy of providing

---

[5] *See* Fed. R. Bankr. P. 4005.  *See also First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir. 1991); *cf. Grogan v. Garner*, 498 U.S. 279 (1991).

[6] *See Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir. 1984); *Everspring Enters., Inc. v. Wang (In re Wang),* 247 B.R. 211, 214 (Bankr. E.D. Tex. 2000).

[7] *See First Union Nat'l Bank v. Golob (In re Golob),* 252 B.R. 69, 75 (Bankr. E.D. Va. 2000) (citing *Farouki v. Emirates Bank Int'l, Ltd.,* 14 F.3d 244, 249 (4th Cir. 1994)).

5

a debtor with a "fresh start," "the Bankruptcy Code must be construed liberally in favor of the debtor

and strictly against the creditor."[8]  Even so, "a discharge in bankruptcy is a privilege, not a right, and

should only inure to the benefit of the honest debtor."[9]

The second issue before the Court is whether a debt owed by the Defendant to the Plaintiff

should be excepted from discharge under § 523(a)(4) or (6) of the Bankruptcy Code.   Exceptions

to discharge are to be narrowly construed in favor of the debtor so as to promote the "fresh start"

policy of the Bankruptcy Code.[10]  Under § 523, a creditor seeking to except its claim from discharge

must prove the claim is nondischargeable by a preponderance of the evidence.[11]

## Conclusions of Law

*§ 727(a)(3)*

This Court first addressed the issue of denial of discharge under § 727(a)(3) more than

sixteen years ago.[12]  In this area of the law, little has changed.  Section 727(a)(3) reads as follows:

The court shall grant the debtor a discharge, unless–

* * *

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed
to keep or preserve any recorded information, including books,
documents, records, and papers, from which the debtor's financial

---

[8]  *Mathai v. Warren (In re Warren),* 512 F.3d 1241, 1248 (10th Cir. 2008) *(*quoting *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997)).

[9]  *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).

[10]  *See Jones v. Jones (In re Jones),* 9 F.3d 878, 880 (10th Cir. 1993).

[11]  *Id.* (*citing Grogan v. Garner,* 498 U.S. 279, 291 (1991)).

[12]  *See Crane v. Morris (In re Morris)*, 302 B.R. 728 (Bankr. N. D. Okla. 2003) (hereafter "*Crane*").

6

> condition or business transactions might be ascertained, unless such
> act or failure to act was justified under all of the circumstances of the
> case[.][13]

The United States Court of Appeals for the Tenth Circuit has held that in order to sustain a claim under § 727(a)(3), the plaintiff must establish that the debtor "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain his financial condition and *material business* transactions."[14]  "If the creditor makes such a showing, the burden then shifts to the debtor to justify his or her failure to maintain the records."[15]  "Records need not be so complete that they state in detail all or substantially all of the transactions taking place in the course of the business.  It is enough if they sufficiently identify the transactions that intelligent inquiry can be made respecting them."[16]

Factors that a court may take into account when determining the sufficiency of disclosures include:

1.     Whether the debtor was engaged in business, and if so, the complexity and
       volume of the business;

2.     The amount of the debtor's obligations;

3.     Whether the debtor's failure to keep or preserve books and records was due
       to the debtor's fault;

---

[13]   § 727(a)(3).

[14]   *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1295 (10th Cir. 1997) (emphasis in original).

[15]    *The Cadle Company v. Stewart, (In re Stewart),* 263 B.R. 608, 615 (10th Cir. BAP 2001) (citing *Brown*, 108 F.3d at 1295), *aff'd*, 35 F. App'x 811 (10th Cir. 2002).

[16]   *Hedges v. Bushnell*, 106 F.2d 979, 982 (10th Cir. 1939), *cited with approval in In re Stewart,* 263 B.R. at 615.  *See also Henkel v. Green (In re Green)*, 268 B.R. 628, 647 (Bankr. M.D. Fla. 2001).

7

4.      The debtor's education, business experience and sophistication;

5.      The customary business practices for record keeping in the debtor's type of business;

6.      The degree of accuracy disclosed by the debtor's existing books and records;

7.      The extent of any egregious conduct on the debtor's part; and

8.      The debtor's courtroom demeanor.[17]

The decision as to whether the books and records provided are sufficient is to be made on a case-by-case basis, and is a matter left to the discretion of the bankruptcy court.[18]  Some courts have held that the bankruptcy court has the discretion to allow the entry of a discharge even if grounds for its denial are found.[19]

At trial, the Court found Bryan to be a quite unsophisticated business person.  Although he was responsible for operating the business of Metro Landscape, he relied heavily on his bookkeeper, accountant, and payroll processor to conduct the record keeping functions of the business.  Even without any business records provided by Bryan, the Trustee was able to administer the case and did not present any testimony or evidence that she was restricted or limited from doing so by a lack of records.  DHS did not point to specific records that were unavailable to it in the conduct of its § 523 action. While the Court finds that Bryan "failed to maintain and preserve adequate records," it cannot find that such failure made it impossible to ascertain his financial condition and material business

---

[17] *State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000).

[18] *Id.*

[19] *Union Planters Bank v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002); *Miami Nat'l Bank v. Hacker (In re Hacker)*, 90 B.R. 994, 998-99 (Bankr. W.D. Mo. 1987); *Citizens Bank of Jonesboro v. Anglin (In re Anglin)*, 89 B.R. 35, 36 (Bankr. W.D. Ark. 1988).

transactions.  Weighing all of the evidence, the Court concludes that DHS has not carried its burden on the § 727(a)(3) claim.

*Failure to State a Claim under § 523*

At trial, Bryan raised the issue of whether DHS had stated a claim against him personally, because Villio had been employed by Metro Landscape, rather than by Bryan directly. Bryan argues that any claim for unpaid child support is a claim against Metro Landscape, and not against him personally. Therefore, if there is no debt owed by Bryan to DHS, there is no issue regarding the dischargeability of that debt.[20] Although not expressly argued by Bryan, the Court notes that if DHS has no claim against Bryan personally, there is also an issue whether DHS has standing to object to Bryan's discharge.

Bryan is allowed to raise the defense of failure to state a claim at any time during these proceedings, up to and including the time of trial,[21] which is what happened in this case. The Court allowed the parties to submit post-trial briefs on the issue of whether DHS had a claim against Bryan personally. Briefs focusing on issues of corporate liability and theories of piercing the corporate veil were timely submitted. Additional evidence in the form of exhibits was attached to both briefs. The Court disregards this evidence, as the invitation to submit post-trial briefs was not an invitation to re-open the record. The Court has a more than ample record before it to decide the issue raised by Bryan at the trial.

While Bryan is free to raise the issue of failure to state a claim at the time of trial, he is not

---

[20] *See Frank and Barbara Broyles Legacy Foundation v. Nichols (In re Nichols)*, 509 B.R. 722 (Bankr. N.D. Okla. 2014).

[21] Fed. R. Civ. P. 12(h)(2)(C), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.

free to disregard the record made at trial, nor is he free to disregard the admitted facts contained in the Pre-Trial Order.[22] Bryan has admitted the following facts:

1. Villio was an employee **of Bryan**.

2. **Bryan** had a statutory and fiduciary duty to withhold child support from Villio's pay.

3. **Bryan** had a statutory and fiduciary duty to remit to Child Support Services the child support withheld from Villio's pay.

These admissions establish Bryan's personal liability to DHS. It is more than equitable to hold Bryan to these admitted facts. Based upon these admitted facts, DHS had no reason to prepare for or anticipate a claim that Bryan owed them nothing. DHS had no reason to engage in trial preparation on any issue relating to piercing the corporate veil between Bryan and Metro Landscape. The Court finds that Bryan has admitted his personal liability to DHS, that DHS has stated a claim against him, and has standing to object to Bryan's discharge and to seek a determination regarding the dischargeability of the debt owed to it.

*Dischargeability under § 523(a)(4)*

A discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]"[23] Two elements must be established to except a debt from discharge under § 523(a)(4):

---

[22] *See* Fed. R. Civ. P. 16(c)(2)(C) ("At any pretrial conference, the court may consider and take appropriate action on the following matters: ... (C) obtaining admissions and stipulations about facts and documents to avoid unnecessary proof[.]"), and Fed. R. Civ. P. 16(d) ("After any conference under this rule, the court should issue an order reciting the action taken. This order controls the course of this action unless the court modifies it."), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7016.

[23] § 523(a)(4).

(1) there must be a showing of defalcation; and (2) the debtor must have been acting in a fiduciary capacity.[24]  Bryan admits that he had a statutory and fiduciary duty to withhold child support from Villio's pay, and to remit those funds to DHS.  He also admits that he failed to remit $5,050.78 in child support to DHS. The issue before this Court is whether that failure constituted a defalcation.

In *Bullock v. BankChampaign, N.A.*, the United States Supreme Court held that

Section 523(a)(4) of the Federal Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).  We here consider the scope of the term "defalcation." <u>We hold that it includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase.  We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.</u>[25]

The Supreme Court went on to state that

Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong.  We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent.  Thus, we include reckless conduct of the kind set forth in the Model Penal Code.  <u>Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty</u>. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985).  See *id.,* § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'wilful blindness' ").  That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation."  *Id.,* § 2.02(2)(c), at 226 (emphasis added).  Cf. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L. Ed. 2d 668 (1976) (defining scienter for securities law purposes

---

[24] *Hubanks v. Jouett (In re Jouett)*, 512 B.R. 277, 292 (Bankr. N.D. Okla. 2014).

[25] *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013) (emphasis added).

as "a mental state embracing intent to deceive, manipulate, or defraud").[26]

Applying the standard set forth in *Bullock*, the Bankruptcy Appellate Panel for the Tenth Circuit has instructed that "in order to hold a debt non-dischargeable under § 523(a)(4), a bankruptcy court must find that the debtor acted with wrongful intent, or, at a minimum, with a conscious disregard of his or her fiduciary duties."[27]

In this case, the Court has little difficulty finding that Bryan was well aware of his duty to remit the funds withheld from Villio's paychecks to the DHS.  Prior to February 2013, Bryan's payments to DHS had been remitted by his payment processor.  After DHS began requiring the use of money orders or cashier's checks for remittance, Bryan took on the responsibility of remitting the funds directly to DHS.  Such payments were irregular and haphazard.  Bryan testified that his approach to dealing with the DHS obligations was in line with his general business philosophy to "fly by the seat of [his] pants." His casual and utterly reckless approach to remitting the funds resulted in the failure to remit $5,050.78 over several years, a direct harm to both DHS, and by extension to Villio.  The Court finds that Bryan is indebted to DHS in the sum of $5,050.78, and that this amount is non-dischargeable under § 523(a)(4). As a result of this finding, the Court does not reach the issue of non-dischargeability under § 523(a)(6).

*Dischargeability under § 523(a)(7)*

DHS alleges that Bryan owes monetary fines to it, and seeks a determination that all such fines are non-dischargeable under § 523(a)(7), which provides that

A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this

---

[26]  *Id.* at 273–74 (emphasis added).

[27]  *Jantz v, Karch (In re Karch)*, 499 B.R. 903, 906 (10th Cir. BAP 2013).

title does not discharge an individual debtor from any debt—

. . .

> (7) to the extent such debt is for a fine, penalty, or forfeiture payable
> to and for the benefit of a governmental unit, and is not compensation
> for actual pecuniary loss, other than a tax penalty—
>
>> (A) relating to a tax of a kind not specified in paragraph (1) of
>> this subsection; or
>> (B) imposed with respect to a transaction or event that
>> occurred before three years before the date of the filing of the
>> petition[.][28]

One of the leading treatises on bankruptcy law has outlined the test for non-dischargeability under

§ 523(a)(7) as follows:

> There are four inquiries that must be made in determining whether a
> debt is nondischargeable under section 523(a)(7). To be
> nondischargeable, the debt must (1) arise as a punishment or sanction
> for some type of wrongdoing by the debtor and not merely be an
> enhanced monetary remedy for what is essentially a breach of
> contract; (2) not be compensation for actual pecuniary loss; (3) be
> payable to a governmental unit; and (4) be for the benefit of a
> governmental unit.[29]

All four elements must be satisfied in order for the fine to qualify under § 523(a)(7).

In support of its claim to fines, DHS relies upon two Oklahoma statutes. The first, 12 Okla.

Stat. Ann. § 1171.3(B)(9), provides that

> 9. The payor is liable for any amount up to the accumulated amount that should have
> been withheld and paid, and **may** be fined up to Two Hundred Dollars ($200.00) for
> each failure to make the required deductions if the payor:
>
>> a. fails to withhold or pay the support in accordance with the

---

[28] § 523(a)(7).

[29] 4 *Collier on Bankruptcy* ¶ 523.13[3] (Alan N. Resnick & Henry J. Sommer eds., 16th
ed.) (footnotes omitted).

provisions of the income assignment notice, or
b. fails to notify the person or agency designated to receive payments
as required.[30]

The second statute cited to this Court by DHS states that:

10. The payor is liable for any amount up to the accumulated amount that should
have been withheld and paid, and **may** also be fined not more than Two Hundred
Dollars ($200.00) for each failure to make the required deductions if the payor:

a. fails to withhold or pay the support in accordance with the
provisions of the assignment notice, or
b. fails to notify the person or agency entitled to support and the
Division as required.[31]

The statutes provide that the fines which DHS seeks to hold nondischargeable are discretionary. The

next question is who has the discretion to impose such fines. Oklahoma statutes answer that

question. It is a state district court, and not DHS.

11. The Division or the obligor may bring an action against the payor to enforce the
provisions of the notice and this subsection in the underlying district court case or by
separate proceeding in district court.[32]

Unless and until a court imposes a fine, there is no obligation to pay one.

There is no evidence before the Court to establish that any fines have been levied against

Bryan for his non-payment of child support on behalf of Villio. Nor has there been any suggestion

that this Court has jurisdiction to impose such fines, or that, even if it did, that this Court should

enter into the world of Oklahoma domestic support law to assess fines that DHS never sought prior

to the filing of the bankruptcy case. The Court concludes that, inasmuch as there are no fines

---

[30] 12 Okla. Stat. Ann §1171.3(B)(9) (emphasis added).

[31] 56 Okla. Stat. Ann. §240.2(D)(10) (emphasis added).

[32] 56 Okla. Stat. Ann. §240.2(D)(11) (emphasis added).

14

currently owed by Bryan, there is no issue before the Court as to whether those non-existent fines are dischargeable. To the extent the complaint filed in this action may be construed as request by DHS asking this Court to assess fines against and/or determine fines allegedly owed to it by Bryan, the request is denied.

### Conclusion

Bryan shall be granted a discharge in Case No. 18-11331-M. The amount of $5,050.78 owed to DHS for unpaid child support is found nondischargeable under § 523(a)(4), and shall not be discharged in Case No. 18-11331-M.

A separate judgment consistent with this Memorandum Opinion shall be issued concurrently herewith.

Dated this 15th day of January, 2020.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

7397.5

15